IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAGGIOS FAMOUS PIZZA, INC. *d/b/a* <br> MAGGIO'S RESTAURANT, <br>     *Plaintiff* <br><br> v. <br><br> SELECTIVE INSURANCE COMPANY <br> OF THE SOUTHWEST, <br>     *Defendant* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br><br> No. 20-2603 |

MEMORANDUM

PRATTER, J.                                                               DECEMBER 21, 2021

An insurance contract is an agreement between the purchaser and insurer. Maggio's Restaurant purchased property insurance to protect its property. When it had to reduce its business operations because of the COVID-19 pandemic, it sought to recover under that insurance policy for lost income and expenses. But its insurance policy reimburses for physical damage, not solely economic loss. And the policy specifically excludes losses caused by a virus. Because Maggio's has not stated a claim for relief under its insurance policy, the Court must grant the insurer's motion to dismiss the complaint.

### BACKGROUND

Maggio's is a restaurant, ballroom and catering venue and company in Southampton, PA. On December 26, 2019, Maggio's purchased property insurance from Selective Insurance Company of Indiana. In March 2020, the Pennsylvania Governor responded to the COVID-19 pandemic with stay-at-home orders and restrictions on business activity. In April 2020, restaurants were permitted to continue physical operations only for takeout and delivery. Maggio's submitted a claim for "losses caused by the COVID-19 pandemic," which Selective denied. Maggio's seeks a declaratory judgment that its losses are covered under the policy. Selective moves to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

A plaintiff's complaint must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation mark omitted). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In addition to the complaint, the Court may consider "exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents" upon which the claims rest. *Id.* at 230.

"Interpretation of an insurance policy, and specifically whether a particular loss triggers coverage, is a question of law." *Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 235 (E.D. Pa. 2021). In interpreting the policy, the Court "ascertain[s] the intent of the parties as manifested by the terms used in the written insurance policy." *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). "The policy must be read as a whole and construed in accordance with the plain meaning of terms." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). "Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Id.* But if a term is ambiguous, the Court construes it "in favor of the insured." *401 Fourth St.*, 879 A.2d at 171.

## DISCUSSION

The COVID-19 pandemic has presented grave financial difficulty for restaurants. Maggio's weekly sales dropped to 12 percent of their pre-pandemic totals. To recover its losses, Maggio's turned to its property insurance. The policy, an "all-risks" policy, reimburses for damage and loss from all causes not expressly excluded by the policy. Maggio's seeks to recover under two provisions: the Business Income and Civil Authority provisions. Selective counters that these

provisions do not cover Maggio's losses because Maggio's experienced no *physical* damage to its property. Even if it had, Selective asserts, the policy expressly excludes losses caused by viruses and compliance with an ordinance or law.

This Court exercises diversity jurisdiction over the declaratory judgment claim under 28 U.S.C. § 1332 because there is complete diversity and Maggio's claims business losses in excess of $150,000.[1] *See Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the viability of the legal claim to be declared . . . .") (internal quotation omitted). Sitting in diversity, this Court must predict what the Pennsylvania Supreme Court would do. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 225 (3d Cir. 2020). The insurance policy unambiguously requires physical loss of the premises, not merely the loss of certain uses of the property. And the policy bars recovery for damage caused by viruses. Thus, the Court finds that the Pennsylvania Supreme Court would very likely decide that Maggio's cannot recover for its pure economic loss under this policy of property insurance.

## I. The Insurance Policy Does Not Cover Pure Economic Loss

Maggio's insurance policy reimburses for "direct physical loss of or damage to" its property. Doc. No. 9-1, at ECF 53. If Maggio's experiences property damage, Selective will pay for the repairs. And if Maggio's must suspend its operations during those repairs, Selective will "pay for the actual loss of Business Income" during the repairs, plus any "Extra Expense" needed to minimize disruptions or get the business going again. *Id.* at ECF 69. The policy also includes a Civil Authority provision that provides as follows: "When a Covered Cause of Loss causes damage to property other than property at the described premise, we will pay for the actual loss of

---

[1] The parties do not dispute this Court's jurisdiction.

3

Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises," subject to certain conditions. *Id.* at ECF 70.

Based on this coverage, Maggio's claims that Selective must provide coverage for its "substantial loss of business income and additional expenses covered under the Policy." Doc. No. 9 ¶ 99. But, as Selective points out, Maggio's did not experience "direct physical loss of or damage to" its building. Maggio's insists that it did, because it partially lost *use* of its building, at least for dine-in customers. But the contract's terms cannot be stretched so far.

A. The Policy Requires Physical Loss of the Premises, Not Merely Loss of Certain Uses

The policy does not define "direct physical loss" or "damage." On its own, "loss" could be read broadly, to include when "illness and contamination prevents the full physical use of the property." Yet the policy protects not against "loss" but against "*direct physical* loss." That is, the loss must involve "immediate" harm to something "real" and "tangible." *Direct* (def. 3), *Black's Law Dictionary* (11th ed. 2019); *Physical* (def. 2), in *id.*

The policy pairs "loss of" the property with "damage to" it. True, as Maggio's points out, the two words, separated by "or," must be read to cover separate things. Still, one informs the other. Paired together, "damage to" contemplates "'a distinct, demonstrable, and physical alteration' of its structure," while "loss of" envisions total destruction, such that the "structure is uninhabitable and unusable." *Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235–36 (3d Cir. 2002) (quoting 10 *Couch on Insurance* § 148.46 (3d ed. 1998)).

The rest of the Business Income provision confirms this. Selective will reimburse for business income lost while operations are suspended "during the 'period of restoration.'" Doc. No. 9-1, at ECF 69. This "period of restoration" is the time for the building to be "repaired, rebuilt or replaced" or, if it cannot be fixed, for Maggio's to find a "new permanent location." *Id.* at ECF 77. Temporarily closing dine-in service requires no period of restoration to repair or rebuild.

4

B. Maggio's Has Not Plausibly Pled That its Building Experienced Physical Damage

Maggio's partial loss of the use of its property for dine-in service is not enough to state a claim under this insurance contract. Looking at the policy as a whole, Maggio's must also plausibly plead some sort of physical effect on its premises. Maggio's proposes two theories for how its building experienced loss or damage.

First, Maggio's argues that "physical loss does not require structural damage, but lost operations or inability to use the business is sufficient." Doc. No. 22, at 21. However, the Third Circuit Court of Appeals case that Maggio's cites for this proposition, *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005), does not abate the *physical* requirement. In *Motorists*, the Court of Appeals interpreted a homeowner's policy to assess whether bacteria rendering a house uninhabitable constituted direct physical loss. In *Motorists*, as in the other (largely homeowner's insurance) cases cited by Maggio's, the contaminating substance was physically present in and around the property. *See also Mareik Inc. v. State Farm Fire & Cas. Co.*, No. CV 20-2744, 2021 WL 1940647, at *5 (E.D. Pa. May 5, 2021) (noting in a similar case involving the same case law that "in each case Plaintiff cites, the insured sought coverage for losses caused by *actual, physical contaminants* in the air or water that were expressly alleged to have caused the suspension of the insured's business operations (i.e., water, ammonia, and odor)"). Maggio's does not allege that its restaurant was actually contaminated with COVID-19 and that the *virus itself* rendered the property temporarily unusable or uninhabitable. *See* Doc. No. 22, at 26 ("Plaintiff alleges that its insured property was at imminent and continued risk of Coronavirus contamination, if it was not contaminated already.").

Instead, Maggio's cites *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), to argue that "there does not have to be actual contamination of property for coverage, so long as a physical cause imminently threatens a property's function or habitability."

5

Doc. No. 22, at 24. Yet, again, this was a case where the Court of Appeals considered a threat that was *physically* present in the structure of the property; in fact, the Court of Appeals held that the policyholder failed to establish coverage despite the physical presence of low levels of asbestos because "the general threat of future damage from that presence[] lacks the distinct and demonstrable character necessary for first-party insurance coverage." *Port Auth.*, 311 F.3d at 236; *see also SA Hosp. Grp., LLC v. Hartford Fire Ins. Co.*, No. 20-cv-1033, 2021 WL 2291116, at *8 (D. Conn. June 3, 2021) ("The concept of 'physical loss' in *Port Authority* is still premised on the existence of a physical, tangible force adversely affecting the property to such a degree rendering it unsuitable for its intended purpose, but yet it is not tantamount to 'damage.'"). Maggio's does not allege any actual physical loss from the presence of the COVID-19 virus, and, thus, Maggio's reliance on a "general threat of future damage" fails.

Second, Maggio's argues that Selective's arguments about the required physical loss are improper at the motion to dismiss stage, where its allegations are to be taken as true.[2] In its Amended Complaint, Maggio's alleges that "Plaintiff has suffered 'direct physical loss of or damage' to its business property locations." Doc. No. 9 ¶ 3; *see also id.* ¶ 5 ("This loss is physical. Plaintiff was unable to use the interior space of its location in the manner in which it had previously used the space."). This, however, is a bare legal conclusion. While the "Court must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Because "interpretation of an insurance

---

[2] In the alternative, Maggio's "also suggests that it is entitled to discovery under Rule 56(d) before any action can be taken on Selective's motion because of it raising factual issues involving the interpretation of the Policy and its provisions and factual issues relating to the Civil Authority Orders, the extent of the impact of those Orders on Plaintiff, [and] Plaintiff's compliance with the Orders." Doc. No. 22, at 10. The Court disagrees because interpretation of an insurance policy is a question of law. Further, it is Maggio's job as the plaintiff to plead the relevant facts based on its knowledge of its own compliance and effects.

policy is a question of law," this issue is well-suited for the motion to dismiss stage. *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 692 (E.D. Pa. 2012).

This Court's conclusion that Maggio's has failed to plausibly allege direct physical loss based on its COVID-related economic losses is also bolstered by recent authority within this District. Courts have repeatedly found, in interpreting similar policy language, that generalized economic loss from COVID-related shutdowns, as a matter of law, does not constitute "direct physical loss." *See, e.g.*, *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616 (E.D. Pa. 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95 (E.D. Pa. 2020); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, 505 F. Supp. 3d 474 (E.D. Pa. 2020); *see also Newchops*, 507 F. Supp. 3d at 624 n.27 (collecting cases).

## C. Maggio's Has Not Plausibly Pled That Nearby Buildings Experienced Physical Damage

Next, in response to Selective's motion to dismiss, Maggio's attempts to recast its claim for coverage as based primarily on the Civil Authority provision. *See* Doc. No. 22, at 5. However, the Policy's Civil Authority coverage is triggered only if "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property." Doc. No. 9-1, at ECF 70. And the civil authority action must be "taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." *Id.* The COVID stay-at-home orders and operating restrictions came from civil authorities, and, according to Maggio's, those orders addressed the COVID-19 pandemic, a dangerous physical condition. Even if true, Maggio's has not pled that a nearby property experienced damage from a "Covered Cause of Loss," that is, "direct physical loss or damage." Doc. No. 9-1, at ECF 70, 81.

7

Maggio's does not plead any factual material to establish that a nearby property experienced physical damage. In its Amended Complaint, Maggio's generally alleges only that "[t]he Civil Authority Actions prohibiting public access to the covered premises and the surrounding area were issued in response to dangerous physical conditions " and "there remained physical impact not only in and within Plaintiff's business property but in and around the surrounding location of Plaintiff's business property in light of COVID-19 presence not being detectable other than through microscopic means, and occurrence of illness." Doc. No. 9 ¶¶ 94–95. Maggio's does not identify any specific property within the required radius where COVID-19 caused direct physical effects. And, as explained above, the virus did not alter some "structural or physical" aspect of the buildings to establish a covered cause of loss. *Newchops Rest. Comcast LLC*, 507 F. Supp. 3d at 624.

In addition, Maggio's does not plead facts to support an inference that the orders "prohibit[ed] access" to its building, just that they "made the business location unusable in the way that they had been used before COVID-19" because Maggio's was reduced to "operating in a limited, curbside and takeout capacity." Doc. No. 9 ¶¶ 3, 17. By Maggio's own admission, workers continued to access the building for curbside and takeout service. Therefore, Maggio's cannot seek coverage for its lost income under the Civil Authority provision either.

**II.     The Insurance Policy Expressly Excludes Coverage for all Losses Caused by Viruses**

Even if Maggio's met the requirements for the Business Income or Civil Authority provisions, it still could not recover. The insurance policy is an "all-risk" policy, which means that the policy pays for damage from all sources except those that are specifically excluded. One of those specific exclusions is the Virus Exclusion, which provides that Selective "[w]ill not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." As Maggio's pleads, they

8

experienced "a loss and shutdown from a virus pandemic." Because Maggio's shutdown "resulted" from COVID-19, the Virus Exclusion bars recovery for its loss.

Despite this, Maggio's insists that the Virus Exclusion does not apply here. For it "has specifically pled that the Civil Authority Orders caused its losses and not the virus itself." Doc. No. 22, at 13. Thus, Maggio's argues, "the relevant language from the Virus Exclusion is subject to more than one reasonable interpretation when applied to the particular factual circumstances present." *Id.* But the response to the virus cannot be separated from the virus itself. *Mareik Inc.*, 2021 WL 1940647, at *6. The shutdown orders "would not have occurred" but for the virus. *Id.* And the Virus Exclusion specifically excludes "all coverage under all forms and endorsements . . . including but not limited to . . . forms or endorsements that cover business income, extra expense *or action of civil authority.*" Doc. No. 9-1, at ECF 80 (emphasis added).[3]

Maggio's also argues that somehow because the Virus Exclusion does not mention the word "pandemic," the exclusion is ambiguous. Maggio's argues that insurance contracts are contracts of adhesion and exclusions should be strictly construed, resolving any ambiguity in favor of the policyholder. Here, Maggio's argues that other insurers have drafted specific pandemic exclusions, and so the Court should not permit Selective "to expand the scope of its Virus Exclusion that does not address a pandemic." Maggio's also alleges in its Amended Complaint that the Virus Exclusion language was drafted "in response to the SARS situation" which was "not a Pandemic and not a global Pandemic." Doc. No. 9 ¶ 33. But the plain language of the Virus Exclusion applies to a *virus*, regardless of whether it reaches pandemic proportions.[4] The Court

---

[3] Maggio's also argues that "Defendant is attempting to . . . extend the language of the Virus Exclusion to apply to a claim based on damage caused by orders of a civil authority." Doc. No. 22, at 13. Yet the Virus Exclusion, by its plain language, *does* apply to claims based on "business income, extra expense or action of civil authority." Doc. No. 9-1, at 80.

[4] The Court also notes that SARS is an illness caused by a coronavirus. *See* CDC, *Severe Acute Respiratory Syndrome (SARS)*, https://www.cdc.gov/sars/index.html (last accessed Dec. 20, 2021).

9

rejects the absurd proposition that a virus exclusion drafted in response to one coronavirus "situation" should not apply to another, more prolific coronavirus. This would be akin to arguing that an exclusion for wind damage does not apply to losses caused by a tornado. "The lack of a specific reference to a pandemic in the policy does not render the provision ambiguous." *Newchops Rest. Comcast LLC*, 507 F. Supp. 3d 616, 627. Maggio's alleged losses caused by a virus are unambiguously excluded by the plain language of the virus exclusion.

Losing on the text, Maggio's asserts that Selective should be estopped from enforcing the Virus Exclusion under a theory of regulatory estoppel. Litigants may not "play[ ] fast and loose with the judicial system by adopting whatever position suits the moment." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001) (internal quotation omitted). If a litigant takes one position in front of a regulatory agency but an opposite position in later litigation, the litigant will be held to its earlier position. *Id.* at 1192–93. Maggio's insists this doctrine of regulatory estoppel applies here, because an insurance trade group, the Insurance Services Office (ISO), made representations to regulators in the past about virus exclusions.

But Maggio's does not plead that *Selective* took a position before state regulators, or plausibly plead that the ISO took a position on Selective's behalf. Even in arguing for additional discovery, Maggio's argues that it seeks more information on what "Defendant and/or ISO" said to regulators. More importantly, Maggio's has not pled that Selective's positions then and now are inconsistent. Back when the ISO sought approval of virus exclusions, it represented that "property insurance policies," like the one at issue here, "do not and were not intended to cover losses caused by viruses." Doc. No. 9 ¶ 36. That is the exact position Selective maintains today. Still, Maggio's argues, regulatory estoppel should apply because the ISO's prior position was untrue: "courts considered contamination by a virus to be physical damage." *Id.* ¶ 36. But estoppel

10

is not related to the truth of a prior position—only whether it conflicts with the current position. Maggio's attempt to rewrite that doctrine fails.

Maggio's Amended Complaint has not plausibly overcome the plain language of the Virus Exclusion. Thus, that exclusion also precludes Maggio's claim even if its losses fell under the general terms of coverage in the first instance.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE